UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LINDA GRAVES                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:14-CV-558-DJH

STANDARD INSURANCE COMPANY                              DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Magistrate Judge by order of the District Court to consider a series of non-dispositive motions filed by the parties in this action involving the payment of employment-related disability benefits.[1]  Plaintiff, Linda Graves, is a former school bus driver for the Jefferson County Public School System (JCPS).  As part of her employment benefits, Graves received disability insurance coverage via a group insurance policy issued by the Defendant, Standard Insurance Company (Standard), to her employer, JCPS.

Graves applied for and received disability insurance benefits from Standard for 30 months based on neck and back pain related to a cervical fusion surgery.  After Standard paid Graves for the initial 2-year benefits period, during which it found Graves unable to pursue her prior occupation as a school bus driver, Standard declined to continue paying Graves benefits for the remainder of the 5-year benefit period, which required that she be disabled from any occupation, not merely her prior one.[2]  Graves subsequently filed suit against Standard in state court (DN 1, Not. of Removal, Ex. A, Complaint) claiming that the insurance company had committed breach of contract, breach of the duty of good faith and fair dealing, violation of Kentucky's Unfair Claims Settlement Practices Act (UCSPA) and of its Consumer Protection

---

[1] The Court will address Standard's motion for sanctions (DN 27) by a separate Report and Recommendation.
[2] Standard paid Graves disability benefits for an additional 6-month period beyond the 24-month "own occupation" benefits period while it considered her claim to payments for the 36 month remainder of the benefit period under the narrower "any occupation" definition of disability thereby resulting in payment of benefits for a total of 30months.

Act (CPA).  Six months later, Standard removed Graves' lawsuit from state court to federal court (DN 1, Not. of Removal).  Graves unsuccessfully attempted to have her suit remanded to state court (DN 13, Mot. to Remand; DN 14, Resp; DN 15, Reply; DN 18, Opin. and Order Denying Mot. to Remand).

The parties thereafter conducted their Rule 26(f) planning meeting (DN 20, Report of Rule 26(f) Planning Meeting) and commenced discovery.  Graves served several third-party subpoenas, one of which was sent to Dr. Richard Semble, a New York physician who had reviewed Graves' medical records in reaching the conclusion that she remained capable of performing sedentary work despite her impairments (DN 22, Notice of Third Party Subpoena to Richard Semble).  Standard sought to obtain from Graves authorization for various medical and employment records releases, which Graves declined to provide (DN 23, Mot. to Obtain Records from Ky. Retirement System).  These events lead the Court to the first motion for consideration, Standard's motion to obtain Graves' records from the Kentucky Retirement System.

## I.

Standard issued a third-party subpoena to the Kentucky Retirement System (KRS) to obtain information about the monthly disability benefits received by Graves from the KRS.  Such benefits under the terms of Standard's group policy must be offset against the amount of the monthly disability benefits paid out by Standard.  KRS retroactively approved Graves to receive disability retirement benefits.  Although Graves has provided Standard with the notice of such approval by KRS, Graves has not provided Standard with either an authorization for the release of the KRS records, nor with any documents or other information that would identify the amount of the monthly benefits paid to her by KRS.

After KRS raised its objection to the subpoena (DN 23, B, Objection.), Standard filed its present motion to obtain Graves' retirement system records.  According to Standard, KRS does not oppose the disclosure of Graves' records so long as it is pursuant to a valid court order. KRS, in fact, has not filed an opposition in response to Standard's motion, nor has Graves either. Standard has filed a reply in support of its motion (DN 33, Reply).

The only question before the Court is whether the records sought by Standard are relevant within the broad scope of Rule 26(b)(1) of the Federal Rules of Civil Procedure.  Neither the Kentucky Retirement System nor Graves assert any form of privilege or claim to confidentiality. The KRS requested records therefore must be produced if they relate to any claim or defense raised in the present action.

The Court agrees with Standard that the records are clearly relevant in a number of different ways.  The records obviously are vitally important to the accurate calculation of Graves' alleged damages, given that the disability insurance policy at issue provides for the aforementioned offset of such KRS benefits against the amounts paid to Graves by Standard. The same records are equally relevant to the existence or nonexistence of a possible counterclaim by Standard against Graves should she have received benefits from the KRS in excess of those paid by Standard under the Group Disability Policy.  If that is the case, Standard may well seek to recover any overpayment made on its part.  The requested records would be directly supportive of this potential counterclaim.  Third, if the records do establish an overpayment by Standard, then as it points out, the viability of Graves' own claims for breach of contract and bad faith will be directly called into issue.

The motion of Standard to obtain records from Kentucky Retirement Systems is **GRANTED** in all respects.  Kentucky Retirement Systems is hereby authorized to disclose the

3

account information of Linda Graves to the Defendant and its counsel.  Further, in accordance with 45 C.F.R. §164.512(e)(1)(i), the Retirement System is also authorized under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to disclose to Standard or its counsel the protected health information of Linda Graves in its possession, custody or control. The Retirement System is authorized to produce the documents identified in the subpoena issued by Standard on Dec. 10, 2014, to Standard or to its counsel.  Any such records disclosed by KRS may be used by the parties and their attorneys in the prosecution or defense of the present lawsuit and for this purpose alone.

## II.

We turn next to two related motions.  The first motion is a motion filed by Standard to bifurcate and stay discovery on Graves' first-party claims of bad faith (DN 24, Mot. to Bifurcate and Stay Discovery).  Standard argues that such motions to bifurcate and to stay discovery on such claims until after Graves establishes that Standard has breached its contractual obligations under the group disability insurance policy are routinely granted in the federal and state courts in Kentucky.  Accordingly, Standard asks that discovery be stayed on counts B, C and D of Graves' amended complaint, the bad faith claims, until such time as the breach of contract claim in count A is resolved.

The second motion is Graves' related motion to extend the time for response to Standard's motion to bifurcate and stay discovery (DN 29, Mot. to Extend Time).  In her motion, Graves asks the Court to extend her deadline in which to file a response because "Standard's motion [to bifurcate and stay discovery] is likely moot."  (Id. at p. 1).  Graves argues that her pending motion for leave to file a second amended complaint to add an additional, non-diverse

party, JCPS, will not only require an amendment of the current discovery scheduling order, but also will "effectively moot" Standard's motion to bifurcate.  In the alternative, should this Court deny Graves' motion for leave to file a second amended complaint, she requests an additional 21 days in which to respond to the motion to bifurcate.

The Court finds no persuasive reason to delay its substantive consideration of Standard's motion to bifurcate and to stay discovery.  The possible amendment to Graves' current amended complaint to add a non-diverse party does not call into question the overwhelming case law that routinely grants motions to bifurcate and stay discovery of first-party claims of bad faith in insurance litigation until such time as the underlying breach of contract claim is resolved.  Graves does not explain in her motion for an extension of time in what fashion her proposed amendment to add JCPS would "effectively moot" the considerations that in the first instance led to Standard's motion to bifurcate and stay.  For these reasons, the Court shall **DENY** Graves' motion for an extension of time in which to respond as the cited case law in favor of Standard's motion is substantial.

Graves has sued Standard for alleged breach of its contractual duty to pay her disability insurance benefits.  She also has sued Standard for breach of the duty of good faith and for violation of the Kentucky UCSPA and CPA.  Before Graves can possibly recover on her first-party claims of bad faith against Standard, she must first show that the insurance company breached its contractual duty to pay her the remaining portion of the disability benefits under the terms of the group policy.  If Graves cannot prevail upon her claim of breach of contract, then her remaining bad faith claims will be subject to dismissal and any time or effort expended on pursuing them will be for naught.

Whether to grant a motion to bifurcate claims pursuant to Rule 42(b) is a matter directed to the Court's sound discretion. *Smith v. Allstate*, 403 F.3d 401, 407 (6th Cir. 2005); *Bath & Body Work, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 747 (6th Cir. 1996). As Standard correctly notes, lawsuits that involve insurance coverage disputes in which the Plaintiff raises bad faith claims similar to those now brought by Graves represent the classic example of litigation that lends itself to bifurcation where the Plaintiff must prevail initially upon her claim of breach of contract before any recovery is possible on the contingent bad faith claims. *See, Nationwide Mut. Ins. Co. v. Jahic*, Case No. 3:11-CV-00155, 2013 WL 98059 at *2 (W.D. Ky. Jan. 7, 2013). *See also, TIG Ins. Co. v. Hosp. Corp of Amer.*, Case No. 1:11-CV-00043-JHM, 2014 WL 3018863 at *8 (W.D. Ky. July 7, 2014) ("Bifurcation is so prevalent in this area because of the three elements that must be proven to prevail on a bad faith claim" one of which is that "the insurer is obligated to pay the claim under the terms of the insurance policy"). Graves' claim against Standard for breach of contract accordingly presents a threshold coverage issue. *See, In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir. 1982), *cert. denied*, 461 U.S. 929 (1983); *Von Wiegen v. Shelter Mut. Ins. Co.*, Case No. 5:13-40-DCR, 2013 WL 3771540 at *2 (E.D. Ky. July 17, 2013).

We certainly are not the first court to note that bifurcation is prevalent in situations such as that now before us. *See, Couch v. Indiana Ins. Co.*, Case No. 13-82-GFVT, 2013 WL 5888316 at *2 (E.D. Ky. Oct. 31, 2013) (observing that bifurcation is prevalent in those cases that involve insurance claims of bad faith where the question of whether the defendant insurer is obligated to pay the underlying claim on the policy may obviate the need to try the related bad faith claim); *Brantley v. Safeco Ins. Co. of Amer.*, Case No. 1:11-CV-00054-R, 2011 WL 6012554 at *3 (W.D. Ky. Dec. 1, 2011) ("A brief review of the prevailing precedent indicates

first-party bad faith claims are routinely separated from coverage issues.") (collecting cases); *TIG Ins. Co.*, 2014 WL 3118863 at *8 ("Numerous courts throughout Kentucky and beyond … have considered insurance contract claims and bad faith claims that consistently granted motions to bifurcate and stay discovery.")

Absent bifurcation and stay of discovery of the bad faith claims, Standard will be subject to potentially unnecessary and possibly expensive discovery. *See, Hardy Oil Co., Inc. v. Nationwide Agribusiness Ins. Co.*, Case No. 11-75-JBC, 2011 WL 6056599 (E.D. Ky. Dec. 6, 2011). Bifurcation of Graves' bad faith claims and a stay of discovery on such claims will potentially remove the need to try the contingent bad faith claims while sparing the time and expense of extensive discovery on issues that may never be tried. *TIG Ins. Co.*, 2014 WL 3118863 at *8. *See also, Mass. Mut. Life*, 2013 WL 142431 at *1 ("Bifurcation is proper … because separating the claims of insurance coverage from bad faith and consumer protection serves to promote convenience, avoid prejudice, and prevent juror confusion.").

It is only appropriate that Graves first establish that she met the "any occupation" definition of disability under the group policy based on her medical condition and her resultant functional limitations before the focus shifts to whether Standard appropriately administered her disability claim, deliberately delayed its consideration of such claim, or incentivized its employees to wrongfully deny the claim. Absent bifurcation Standard certainly risks unfair prejudice at trial. *Mass. Mut. Life*, 2013 WL 142431 at *3 (Joint trial of all claims "would interject the issue of bad faith into the possibly dispositive dispute of insurance coverage, thus complicating discovery and the trial.") Accordingly, the motion of Standard to bifurcate the trial of the bad faith claims in counts B, C and D of the amended complaint from the breach of

contract claim contained in count A, and to stay discovery on counts B, C and D until count A is resolved, is **GRANTED**.  Graves motion for an extension of time to respond is **DENIED**.


III.

The next motion before the Court is the motion of Graves for leave to file a second amended complaint (DN 26, Mot. for Leave to File Amended Complaint).[3]  In her motion, Graves seeks to add a non-diverse defendant party, the Jefferson County Public Schools.[4] Graves in her proposed second amended complaint makes claims against JCPS for:  (1) breach of contract based on its alleged failure to provide her with disability income in the amount or duration agreed upon; (2) misrepresentation regarding the nature and extent of her disability coverage; and (3) a violation Kentucky's wage and hours law because Graves allegedly is "entitled to receive all of the promised disability income as wages."  (DN 26, Mot. to Amend, Ex. Second Amended Complaint, p. 9, ¶60).

Graves now argues that the liberal policy of Rule 15(a)(2) to grant leave to amend "when justice so requires," along with the related principle that cases should be tried on their merits, both dictate that her motion for leave to file a second amended complaint should be granted by the Court.

In its response, Standard accuses Graves of "a transparent attempt to divest this Court of jurisdiction…."  (DN 34, p. 1).  Standard's view is that Graves' purpose in seeking to file a second amended complaint is to join a non-diverse defendant without acknowledging the "jurisdictional implications" and without discussing the statutory factors of 28 U.S.C. §1447(e).

---

[3] Graves' motion although styled as one for leave to file an amended complaint, in actuality seeks leave to file a second amended complaint. Graves has already filed an amended complaint.

[4] Graves on the face of her motion does not identify the party to be added as JCPS or the nature of the proposed claims it intends to bring against JCPS.  She does, however, include with her motion a copy of the proposed second amended complaint.

Standard argues that Graves' motion is untimely, that it raises unrelated claims that are better pursued in a separate action, and that to grant the motion will deny Standard its substantial interest in litigating in federal court, an interest it has already once successfully defended against a motion to remand.

We agree that the appropriate standard to be considered in adjudicating Graves' motion to add a non-diverse party defendant is found in the language of 28 U.S.C. §1447(e). *See, Lawson v. Lowe's Home Ctrs, LLC*, Case No. 5:13-374-KKC, 2015 WL 65117 at *3 (E.D. Ky. Jan. 5, 2015) ("Congress enacted Section 1447(e) to address this specific type of proposed amendment at issue here - - an amendment to join additional defendants whose joinder would destroy subject matter jurisdiction."). As Standard notes, "Section 1447(e) enables a court to prevent a party from single-handedly depriving it of jurisdiction by giving the court the discretion to prohibit joinder of non-diverse parties after removal." *Davis v. Owners Ins. Co.*, 29 F.Supp.3d 938, 942-43 (E.D. Ky. 2014). *See also, Barnett v. MV Trans. Inc.*, Case No. 3:14-CV-00250-TBR, 2014 WL 1831151 at *2 (W.D. Ky. May 8, 2014) (Analysis under §1447(e) "is necessary to prevent amendments motivated simply by the plaintiff's desire to return to state court, as opposed to a desire to add a party whose presence is needed to secure a complete relief.")

When evaluating a proposed amendment that would join a non-diverse party, the responsibility of the Court in the broadest sense is to determine if such joinder would be fair and equitable. *Lawson*, 2015 WL 65117 at *2. The Court in making this determination is to be guided in its task by considering whether: (1) the purpose of the amendment is to defeat federal jurisdiction; (2) the Plaintiff has been dilatory in filing the amendment; (3) the Plaintiff will be significantly prejudiced if the amendment is not allowed; and (4) any other equitable factors.

*Davis v. Owners Ins. Co.*, 29 F.Supp.3d 938, 942-43 (E.D. Ky. 2014); *Allen v. Outback Steakhouse of Florida, LLC*, Case No. 3:14-CV-00211-CRS, 2014 WL 2766109 at *1 (W.D. Ky. June 18, 2014).

Here, consideration of the above factors leads the Court to conclude that the requested amendment to add a non-diverse party is neither fair nor equitable under the statute.  No serious question exists in the Court's mind that the proposed amendment is offered by Graves in an effort to defeat federal jurisdiction.  Nowhere on the face of the motion does Graves acknowledge that what she proposes is to add a non-diverse party.  Indeed, Graves does not identify on the face of her motion the party that she intends to add, or the proposed claims to be brought against it.  Graves makes no reference to 28 U.S.C. §1447(e) either.  Further, as Standard correctly points out, her proposed, second amended complaint uses terminology that references the jurisdiction of the state circuit court and makes reference to the Kentucky Rules of Civil Procedure, specifically CR8.01, rather than the more appropriate federal jurisdictional standard.  Finally, Graves' counsel has filed a similar motion to add JCPS as a non-diverse party in another lawsuit brought against Standard, *Anderson v. Standard Ins. Co.*, Case No. 3:14-CV-00051 (W.D. Ky. 2014) (DN 39).

The timing of Graves' motion to amend also is problematic.  Logic would suggest that Graves would be well aware of any potential claims against JCPS at the time that her suit was originally filed in February of 2014, and certainly by the time that her suit was removed to federal court on August 5, 2014, some six months later.  Yet, Graves did not seek to amend to add JCPS, a non-diverse party, until three months *after* the District Court denied her prior motion to remand this past November.  Not until Feb. 3, 2015, almost a year after suit was filed, did Graves propose to add JCPS, without identifying it on the face of her motion for leave to amend.

This extraordinary delay far exceeds the more limited delay condemned in the cases cited by Standard in its response. *Anzures*, 886 F.Supp.2d at 565 (delay of two months after the original complaint was filed, and 30 days after notice of removal, was held to be dilatory where the plaintiff was aware of the potential defendant's involvement when the plaintiff filed suit originally in state court); *G&C Land*, 587 Fed.Appx. at 103 (delay of four months after removal where plaintiffs seek to add non-diverse defendants was held to be dilatory); *United Prop. & Cas. Ins. Co. v. A&E Factory, LLC*, Case No. 6:14-CV-1987-ORL, 2015 WL 328223 at *4 (M.D. Fl. Jan. 26, 2015) (delay of only one month found to be dilatory where the plaintiffs knew of the proposed defendant's potential liability when they filed their original complaint). The above-cited cases strongly indicate that a delay of a year should be held to be dilatory so as to weigh against the Plaintiff's motion.

Graves suggests in her reply that absent joinder of JCPS she will be significantly prejudiced. Whether that is so is dependent on whether she can obtain a full recovery against Standard without the presence of JCPS in the lawsuit. *Lawson*, 2015 WL 65117 at *4 ("[A] plaintiff is not substantially prejudiced when it could obtain complete relief without joining additional parties."). Graves' current claims against Standard do not require the presence of JCPS in order for her to obtain a fully recovery. The obligation to pay benefits runs to Standard, as do Graves' claims of bad faith in the administration of her disability claim.

Graves does not allege that JCPS is jointly liable for any of the claims she now raises against Standard. What she hopes to pursue are separate employment claims against JCPS. Accordingly, denial of her motion to join JCPS would not preclude her full recovery against Standard in a separate suit. *Davis*, 29 F.Supp.3d at 944 (Plaintiff was not substantially

prejudiced by the denial of joinder where she could obtain full recovery without adding a non-diverse party.).

Graves may pursue her claims against JCPS by way of a separate suit in state court to determine whether JCPS misrepresented the nature and extent of her disability benefits or breached its promise to provide such benefits for the duration of her disability or whether such disability benefits themselves are considered to be unpaid wages. *See, United Prop. & Cas.*, 2015 WL 328223 at *5 (No prejudice resulted in the denial of a motion to join a non-diverse party where the plaintiff could pursue a new lawsuit against the same party in state court). *Linares*, 2012 WL 1441577 at *3 (same). Where a defendant is being joined as a means to defeat federal jurisdiction, as appears clear in the present case, any claimed prejudice to the plaintiff in filing a separate action in state court is substantially diminished. *See, Brandenburg v. Stanton Health Facilities*, *L.P.*, Case No. 5:14-183-DCR, 2014 WL 4956282 at *4 (E.D. Ky. Oct. 2, 2014).

Finally, the Court agrees that Standard has a substantial interest in proceeding in federal court. The addition now, a year after suit was originally brought, of a non-diverse party would defeat this interest. *See, Lawson*, 2015 WL 65117 at *5 (North Carolina defendant sued by Kentucky citizen in a Kentucky state court had a significant interest in retaining a neutral forum in federal court). Further, the joinder of JCPS would not only divest Standard of that interest, but would introduce a slew of legal issues unrelated to Graves' current claims against Standard. For example, a serious question exists as to whether JCPS would be entitled to governmental immunity, as Standard correctly points out. *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 305 (Ky. 2014) (holding that governmental immunity prohibits a lawsuit against a state university for payment of long term disability benefits compensation so that claims for breach of contract to

12

provide such disability benefits were subject to dismissal).  Additionally, a valid question exists as to whether such claims against JCPS would be timely, irrespective of the governmental immunity issue, where such claims against JCPS are potentially subject to the one-year statute of limitations of KRS 44.110(1) and KRS 45A.260(2).

Finally, as to Graves' potential wages and hours claim against JCPS, the law of Kentucky is dead set against the proposition that disability insurance benefits may be characterized as being wages rather than merely fringe benefits.  *Francis v. Marshall*, 684 F.Supp.2d 897, 911 (E.D.Ky. 2010) ("[B]enefits such as retirement plan, health and disability insurance, and life insurance are not 'wages' as a matter of law.  Kentucky courts have long held that such benefits are 'fringe benefits' - - not wages or salary.") (citing *Caldwell County Fiscal Court v. Paris*, 945 S.W.2d 952, 954-55 (Ky. App. 1997)).  Accordingly, the joinder of JCPS would exponentially increase the complexity of the present litigation as well as the cost given the multitude of unrelated legal issues that would be introduced.  (DN 34, Resp. pp. 18-19).  For all of these reasons, the Court concludes that Graves' motion for leave to file a second amended complaint to add a non-diverse party is **DENIED**.

A separate order will be issued consistent with this memorandum opinion.

Cc:      Counsel of Record