UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LINDA GRAVES                                        PLAINTIFF/COUNTER DEFENDANT

v.                                                  Civil action no. 3:14-cv-00558-CRS

STANDARD INS. CO.                                   DEFENDANT/ COUNTER CLAIMANT

Memorandum Opinion

I.   Introduction

Linda Graves sued Standard Insurance Company ("Standard") for damages related to Standard's handling of her long-term disability benefits. Standard counterclaimed, alleging that it overpaid Graves for the long-term disability benefits she did receive.

The Court will address the motions before the Court in the following sequence:

1. Plaintiff's motion for partial judgment on the pleadings (DN 81)
2. Plaintiff's second motion to remand (DN 70)
3. Plaintiff's objection to magistrate judge's opinion and order denying plaintiff's requested time to respond to summary judgment (DN 110) ("Plaintiff's first objection")
4. Plaintiff's motion to stay magistrate judge's order denying plaintiff's requested time to respond to summary judgment (DN 111) ("Plaintiff's first motion to stay")
5. Plaintiff's objections to magistrate judge's order imposing sanctions for her counsel's conduct during Dr. Semble's deposition and constraining the continuation of Dr. Semble's deposition to three hours (DN 114) ("Plaintiff's second objections")
6. Plaintiff's motion to stay magistrate judge's order that plaintiff has thirty days to complete Dr. Semble's deposition (DN 115) ("Plaintiff's second motion to stay")

The Court will grant partial judgment on the pleadings to Graves on the unjust enrichment claim. The Court will dismiss Standard's unjust enrichment claim, with prejudice.

The Court will deny the Plaintiff's second motion to remand.

1

The Court will overrule the Plaintiff's first objection and second objections. The Court will deny as moot the Plaintiff's first motion to stay and grant the Plaintiff's first motion to stay.

II. <u>Plaintiff's motion for partial judgment on the pleadings</u>

Graves moves for partial judgment on the pleadings. Mot. Part. J. Pldgs. (DN 81). Graves seeks dismissal of Count II of Standard's counterclaim for unjust enrichment. *Id.*

A. <u>Legal standard</u>

"The Court reviews a 12(c) motion under the same standard as a Rule 12(b)(6) motion." *Underwriters Safety & Claims, Inc. v. Travelers Prop. Cas. Co. of America*, 2016 WL 297307 *1, *2 (W.D. Ky. Jan. 22, 2016). The claimant must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading "does not need detailed factual allegations," but a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Ultimately, the pleading must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Court assumes the veracity of well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* The Court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A "naked assertion" without "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

B. <u>Count II of Standard's counterclaim</u>

Count I of Standard's counterclaim is a breach of contract claim. Countercl. ¶¶ 39 – 42 (DN 61-2). Count I alleges that Graves breached the Group Policy and Repayment Agreement

by failing to inform Standard that she had received long term disability benefits from the Kentucky Retirement Systems and the Social Security Administration and by failing to repay the overpaid long-term disability benefits. *Id.* ¶¶ 41 – 42.

Count II of Standard's counterclaim is an alternative claim for unjust enrichment. *Id.* ¶¶ 43 – 48. Count II alleges that Standard overpaid Graves' long-term disability benefits and that she has unjustly retained them. *Id.* ¶¶ 44, 48.

Kentucky law precludes recovery for unjust enrichment when an explicit contract is the subject of the dispute. *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 162 (Ky. Ct. App. 1977). "The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Id.* "Where an express contract governs, unjust enrichment is not appropriate." *Dixie Fuel Co., LLC v. Straight Creek, LLC*, 2011 WL 845828 *1, *5 (E.D. Ky. 2011).

Graves argues that the unjust enrichment claim cannot stand when an express contract, the Group Policy, governs Standard's counterclaim. Pl.'s Mot. Part. J. Pldgs. 1 – 3.

Standard responds that it properly pleaded the unjust enrichment claim as an alternative to the breach of contract claim. Def.'s Resp. Opp. Mot. J. Pldgs. 4 – 5 (DN 86). Standard argues that the unjust enrichment claim is proper when Graves disputed in the answer that the Group Policy provides a contractual basis for its right of recovery and recoupment. *Id.* at 4.

Graves did not dispute the existence of the Group Policy. *See, e.g.*, Ans. to Countercl. ¶9 (DN 69) (admitting that the Group Policy contains the phrase, "You must repay us for the resulting overpayment of your claim."); *see also*, Group Policy, Page ID# 1313 (DN 61-2). Also, Graves did not dispute the existence of the Repayment Agreement. *See, e.g.*, Ans. to Countercl. ¶ 14 (admitting that the Repayment Agreement contains the phrase, "I understand that

my receiving or being eligible to receive Deductible Income may result in an overpayment of LTD benefits."); *see also*, Repayment Agrmt. Page ID# 1326 (DN 61-2).

Rather, Graves disputed the legal conclusions asserted in the counterclaim for whether the Group Policy and Repayment Agreement obligate Graves to repay allegedly overpaid benefits. For example, the counterclaim alleges, "Pursuant to the Group Policy and Repayment Agreement, Graves is obligated to repay to Standard and Standard is entitled to recover and recoup the overpayment plus interest resulting from Graves' receipt of benefits from the [Kentucky Retirement Systems and Social Security Administration]." Countercl. ¶ 38. Graves answered, *"*This paragraph is a legal conclusion and does not require a response." Ans. to Countercl. ¶ 38.

Standard relies on *Knight* for the proposition that, "Where, as here, a dispute exists as to whether the contract governs the issues, pleading alternative claims for breach of contract and unjust enrichment is permissible." Def.'s Resp. Opp. Mot. J. Pldgs. 5 (citing *Knight v. Stewart Title Guar. Co.*, 2014 WL 4986676 at *10 (E.D. Ky. 2014)). This Court has rejected similar arguments that an unjust enrichment claim can proceed concurrently with a breach of contract claim. *Handmaker v. CertusBank, N.A.*, 2015 WL 60439390 *3 (W.D. Ky. 2015) ("Those cases are distinguishable because the existence of a contract was still in dispute."); *Business Payment Sys., LLC v. National Processing Co.*, 2012 WL 6020400 *17 ("Because it is clear that BPS performed any services for NPC pursuant to the marketing agreement—an explicit contract—the unjust enrichment claim will be dismissed."); *see also*, *Shane v. Bunzi Distribution USA, Inc.*, 200 F.App'x 397, 404 (6th Cir. 2006) (affirming district court's dismissal of unjust enrichment claim when an express contract existed).

Though the parties disagree about whether Standard *should* recover allegedly overpaid benefits from Graves, the parties agree that the Group Policy governs whether Standard *can* recover allegedly overpaid benefits from Graves. Pl.'s Mot. Part. J. Pldgs. 2 ("Fundamentally, the relationship between Ms. Graves and Standard and the rights and obligations of the parties is defined and governed by a written contract, the Group Policy, which dictates the terms and conditions under which benefits are payable."); Countercl. ¶ 12 ("The Group Policy establishes Standard's right of recovery and recoupment for an Overpayment Of Claim when disability benefits have been overpaid."). Therefore, Standard's unjust enrichment claim cannot stand because an explicit contract, the Group Policy, governs whether Standard can recover allegedly overpaid benefits from Graves. For this reason, the unjust enrichment claim fails to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

The Court will grant Graves's partial motion for judgment on the pleadings. The Court will dismiss the unjust enrichment claim, with prejudice.

III.   Plaintiff's second motion to remand

Graves originally filed this lawsuit in Jefferson Circuit Court. Am. Compl. 1 (DN 1-3). Standard timely removed on August 5, 2014. *See* Mem. Op. & Order 1 (DN 18). On November 7, 2014, the Court denied the plaintiff's first motion to remand. *Id.* In denying the motion to remand, the Court discussed Graves's argument that Standard had not met the amount in controversy. *Id.* at 5 – 6. In a sworn interrogatory answer, Graves sought damages of "at least $883,000." *Id.* at 6. The Court found that Standard met its burden of establishing diversity jurisdiction by a preponderance of the evidence. *Id.* at 3 – 7.

Notwithstanding the Court's prior ruling, Graves again moves for remand. Pl.'s 2nd Mot. Remand (DN 70). Graves argues that Standard's counterclaim, filed after the Court denied

5

Grave's first motion to remand, destroys federal jurisdiction. *Id.* at 1. Standard's counterclaim asserts that it overpaid Graves at least $41,764.08. Countercl. ¶¶ 42, 44. Thus, under Graves's argument, subtracting Standard's alleged contractual damages ($41,764.08) from Graves's potential recovery for the breach of contract claim ($5,047.05) means that Graves's claim has a negative value ($5,047.05 – $41,764.08 = –$36,717.03), and the amount in controversy is no longer met. *Id.*

The Court previously rejected Graves's argument that her sworn interrogatory answer that she valued her claim at $883,000 was insufficient to establish the amount in controversy by a preponderance of the evidence. Mem. Op. & Order 5. The Court already held that Standard met its burden of demonstrating by a preponderance of the evidence that federal jurisdiction existed at the time of removal. *Id.* at 6 – 7.

Michael Grabhorn's second motion to remand did not even acknowledge that the Court had already addressed whether the amount in controversy had been met. In the reply in support of the second motion to remand, Andrew Grabhorn continued to maintain that "Standard never met its burden of proving by a preponderance of the evidence that this Court had subject matter jurisdiction." Pl.'s Reply Supp. Mot. Remand 2 n.2 (DN 76). In a recently filed reply, Andrew Grabhorn asserted, "Again, the amount in controversy cannot be satisfied by a grossly overestimated demand." Pl.'s Reply Supp. Mot. Stay 2 (DN 117).

Beyond the second motion to remand, Andrew Grabhorn filed a notice of supplemental authority. The supplemental authority is an opinion by U.S. District Judge Virginia M. Hernandez Covington of the U.S. District Court of the Middle District of Florida. Pl.'s Not. Supp. Auth. 1 (DN 91) (quoting *Zabic v. Verizon Wireless Servs.*, LLC, 2015 LEXIS 170096 (M.D. Fl. Dec. 19, 2015)). That court remanded a case for a second time because "That Zabic

6

offered to settle her case for more than $75,000 does not establish by a preponderance of the evidence that the amount in controversy requirement is met." *Zabic*, 2015 LEXIS 170096 at *14.

These arguments fly in the face of the Court's previous opinion. The supplemental authority and briefing by both Michael and Andrew Grabhorn make clear that Graves seeks the Court's reconsideration of its prior ruling: that Graves' sworn interrogatory answer that she sought damages of "at least $883,000" cannot establish the amount in controversy. Michael Grabhorn filed the second motion to remand ten months after the Court denied remand the first time. Andrew Grabhorn filed the supplemental notice of authority thirteen months after the Court denied remand the first time. The Court rejects this transparent and grossly untimely attempt to reopen a settled issue.

It is well-established that defendants must demonstrate *at the moment of removal* that the Court has subject-matter jurisdiction. *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 539 (6th Cir. 2006); *Knox Hills, LLC v. Ambac Assur. Corp.*, 2015 WL 1298622 *1, *2 (W.D. Ky. Mar. 23, 2015); *Johnson v. Hartford Fire Ins. Co.*, 2008 WL 3850482 *1, *4 (W.D. Ky. 2008); *see also*, Mem. Op. & Order 6 ("The Eastern District noted that defendants must be prepared '*at the moment of removal* to demonstrate by a preponderance of the evidence that federal jurisdiction exists, but that the defendant in that case was not so prepared.") (emphasis in original).

The Court already held that Standard met this burden of demonstrating by a preponderance of the evidence that federal jurisdiction exists at the time of removal. The Court will not revisit this prior holding. The Court will deny the second motion to remand.

In the last two paragraphs of its response, Standard requested its attorney fees under 28 U.S.C. § 1927[1] for having to litigate the second motion to remand. Def.'s Resp. Opp. 2nd Mot. Remand 6 – 7 (DN 73). In reply, Graves argued that the request was improper because Standard should have filed a separate motion. Pl.'s Reply Supp. 2nd Mot. Remand 7. Additionally, Graves requested "an opportunity to respond further." *Id.*

At this time, absent the filing of a separate motion, the Court will not consider Standard's request for attorney fees for responding to the second motion to remand.

IV.  Plaintiff's first objection and Plaintiff's first motion to stay

On March 14, 2016, Standard moved for summary judgment. Mot. Summ. J. (DN 101). On April 6, 2016, Graves moved for an extension of time to respond to summary judgment. Pl.'s Mot. Ext. Time (DN 104). Graves asked for an extension of twenty-one days beginning after the Court rules on the pending motions, including the second motion to remand. *See* Proposed Order (DN 104-1). Standard opposed extending Graves's deadline and opposed Graves's related motion to stay. Def.'s Resp. Opp. Pl.'s Mot. Ext. Time 1 (DN 106); Def.'s Resp. Opp. Mot. Stay 1 (DN 116).

On May 18, 2016, the magistrate judge denied Graves's request for an "indefinite extension" of time to respond to summary judgment. Order 2 (DN 108). The magistrate judge

---

[1] The statute says,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonable and vexaciously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

8

denied the motion because Rule 56(d)[2] requires a litigant seeking extra time to respond to summary judgment to file an affidavit or declaration showing that it cannot present facts essential to justify its opposition, and Graves had not presented such evidence. *See id.* The magistrate judge explicitly said, "Graves shall be given 21 days from the date of entry of the present order in which to respond to Standard's pending motion for summary judgment." *Id.* Twenty-one days from the entry of that order was June 8, 2016.

On June 1, 2016, Graves objected to the magistrate judge's order denying Graves's request. Pl.'s 1st Obj. (DN 110). First, Graves argues that the magistrate's finding of good cause to amend the scheduling order was also sufficient to support an extension of time for responding to summary judgment. *Id.* at 3. Second, Graves also takes issue with the fact that the magistrate judge did not discuss the motion for partial judgment on the pleadings. *Id.*[3] Third, Graves argues that she has not asked for an indefinite extension, but seeks only twenty-one days after Court rules on the pending motions. *Id.* at 4.

On June 14, 2016, Graves moved to stay a ruling on the magistrate judge's order. Pl.'s 1st Mot. Stay (DN 111). This first motion to stay said that due to an "inadvertent oversight and mistake," Graves did not file the motion to stay at the same time as the motion for extension of time. *Id.* at 1. Graves's first motion to stay asked the Court to stay the magistrate judge's

---

[2] Rule 56(d) says: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)  defer considering the motion or deny it;

(2)  allow time to obtain affidavits or declaration or to take discovery; or

(3)  issue any other appropriate order."

[3] The magistrate judge did note that there were an "extraordinary number of pending motions" before this Court, and explicitly mentioned document number 81, the partial motion for judgment on the pleadings, as one of those motions. Order 1.

twenty-one day deadline until the Court resolved the pending motions, including the second motion to remand. *Id.*

In reviewing an objection to a magistrate judge's order on a nondispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Graves has not pointed to any portion of the magistrate judge's order that was "clearly erroneous" or "contrary to law." Indeed, Graves did not address the central reasoning behind why the magistrate judge denied Graves's requested extension: Graves failed to comply with the affidavit or declaration requirement of Rule 56(d). Although Graves argues that she did not request an indefinite extension of time, the Court finds no error in the magistrate judge's decision to grant a twenty-one day extension.

The Court will overrule Graves's objection to the magistrate judge's order denying her requested time to respond to summary judgment.

This leaves an important issue on the table: Graves's deadline for responding to summary judgment. Graves did not meet the June 8, 2016 deadline imposed by the magistrate judge. In filing the motion to stay after the deadline passed, Graves acknowledged that objecting to the magistrate judge's order did not necessarily stay the effect of the order. Pl.'s 1st Mot. Stay 1.

A deadline is a deadline. The Court could deem Graves's continued failure to meet the magistrate judge's deadline to respond to summary judgment as an abandonment of Graves's claims and defenses. *See, e.g.*, *Phillips v. Ternes*, 2014 WL 4293003 *1, *2 (W.D. Ky. 2014) (a plaintiff abandons a claim when the plaintiff fails to respond to summary judgment). Graves's counsel has managed to avoid filing a response to summary judgment—a response that was due the first week of April—for over four months. Graves's counsel relied on the fact that the

10

second motion to remand was pending to support requests for more time.  *See* Pl.'s Mot. Ext. Time 1; Pl.'s 1st Obj. 3; Pl.'s 1st Mot. Stay 3; Pl.'s Reply Supp. Mot. Stay 1 (DN 117).  The Court already discussed why the second motion to remand lacked merit.  *See* discussion *supra* Part III.  This sequence offers further support for the Court's conclusion that Michael Grabhorn filed, and Andrew Grabhorn continued to litigate, the second motion to remand purely to game the Court's scheduling order.

On the other hand, the Court prefers to rule on dispositive motions on the merits, not procedural technicalities resulting from what Graves's counsel says was "inadvertent oversight and mistake."  Pl.'s 1st Mot. Stay 1.  In fairness to Standard, who opposed extending the deadline and a stay, the Court will order Graves to respond to summary judgment within fourteen days.  The Court will deny the first motion to stay as moot.

V. <u>Plaintiff's second objection and second motion to stay</u>

The Court has already sanctioned Graves's counsel once in this case.  Mem. Op. & Order (DN 72) (adopting R. & R. (DN 54)).  The first sanction resulted from Graves's counsel's use of "thinly veiled threats designed to silence the adverse opinion of an opposing party's witness."  Mem. Op. & Order 5.  The opposing party's witness is Dr. Richard Semble, who is at the center of the new sanctions recommendation from the magistrate judge.

A. <u>The magistrate judge's recommendation</u>

The magistrate judge detailed the "substantial and contentious history" between Dr. Semble and Graves's attorney, Michael Grabhorn.  Order Rec. Sanct. 2 (DN 112).  Michael Grabhorn did not object to the magistrate judge's discussion of this "substantial and contentious history."  The Court incorporates the magistrate judge's factual findings regarding the history between Michael Grabhorn and Dr. Semble.  *Id.* at 2 – 6.

11

In short, Michael Grabhorn sent Dr. Semble a notice of deposition for White Plains, New York, on January 14, 2016. Standard's attorney, Jacqueline Herring from Chicago, appeared in person. Without warning to Standard, Michael Grabhorn appeared by videoconference from Kentucky. After fifteen minutes of Michael Grabhorn's "overtly disrespectful" conduct questioning Dr. Semble, Dr. Semble announced that the deposition was over. Order Rec. Sanct. 17.

Graves moved to sanction Standard's counsel and moved to strike Dr. Semble for terminating the deposition. Pl.'s Mot. Sanct. (DN 93). Standard moved to terminate the deposition and in the alternative for a protective order. Def.'s Mot. Prot. Order 9 (DN 95).

The magistrate judge issued a detailed eighteen page opinion on these motions. The magistrate judge concluded, "First, as a matter of fact, the Court concludes that attorney [Michael] Grabhorn deliberately intended to provoke Dr. Semble from the outset of the deposition." Order Rec. Sanct. 10. The magistrate judge found that Graves's counsel violated Rule 30(b)(3)(A)[4] for failing to state in the notice of the deposition the method of recording the deposition, and Graves's counsel violated Rule 30(b)(4)[5] for failing to obtain a court order or stipulation before taking Dr. Semble's deposition by remote videoconference. *Id.* at 11. Michael Grabhorn did not object to the magistrate judge's findings that he violated Rule 30 twice.

---

[4] "The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition." Fed. R. Civ. P. 30(b)(3)(A).

[5] "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions." Fed. R. Civ. P. 30(b)(4).

The magistrate judge concluded that Graves's counsel should pay for the cost of recording the attempted January 14, 2016 deposition, and Graves's counsel should pay for the cost of audiovisual recording for a future deposition of Dr. Semble. *Id.* at 12. Graves did not object to this conclusion. The Court will adopt the conclusion of the magistrate judge that Graves's counsel shall pay for the January 14, 2016 audiovisual recording and any audiovisual recording of a future deposition of Dr. Semble.

The magistrate judge denied Standard's request to terminate Dr. Semble's deposition. *Id.* at 13. The magistrate judge found that Michael Grabhorn's "obvious intent" in treating Dr. Semble the way he did was "to provoke a situation that could be the basis for the doctor's exclusion as an expert witness." *Id.* at 17. The magistrate judge wrote

> that any such future deposition shall be scheduled within the next 30 days at a time and place mutually agreeable to the parties and shall be conducted in accordance with not only the requirement of the Federal Rules of Civil Procedure and the Kentucky Rules of Professional Conduct set forth in Supreme Court Rule 3.130, but also in accordance with the aspirational guidelines of the Kentucky Bar Association's Code of Professional Courtesy.

*Id.* at 13.

The magistrate judge denied Graves's motion to sanction Standard's attorney Jacqueline Herring for terminating Dr. Semble's deposition reasoning that, "It was the deliberate misconduct of attorney Grabhorn himself that was the genesis of the entire situation given the manner in which he conducted the deposition." *Id.* at 13 – 14. Graves objects to the magistrate judge's imposition of sanctions, but Graves did not object to the magistrate judge's denial of plaintiff's motion for sanctions against Standard. *See* Pl.'s 2nd Obj. (DN 114).

### B. Graves's second objections

#### 1. Notice and opportunity

First, Graves objects to the imposition of sanctions on the ground that the magistrate judge failed to give notice of the potential for statutory sanctions. *See, e.g.*, Pl.'s 2nd Obj. 2 ("In order to enter 28 U.S.C. § 1927 sanctions *sua sponte*, the Magistrate Judge was required to give Ms. Graves advance notice of the legal rule being considered, the reasons for the sanctions, and the form the sanctions would take.").

However, in ruling on Graves's objection, the issue is not whether the magistrate judge provided notice of the potential for statutory sanctions. Rather, the issues are (1) whether Michael Grabhorn was on notice of the potential for statutory sanctions after he received the magistrate judge's order which explicitly recommended sanctions, and (2) whether he had a fair opportunity to respond to the potential imposition of statutory sanctions when he filed objections to the magistrate judge's recommendation.

The cases on which Graves relies to support the lack of notice argument are unavailing. Graves cited two district court opinions from this circuit and one Sixth Circuit opinion. Pl.'s 2nd Obj. 2 – 3 (citing *Gordon v. Dadante*, 2009 WL 1850309 *25 n.27 (N.D. Oh. 2009); *Conz v. Lady*, 2000 U.S. Dist. LEXIS 22137 *22; *Davis v. Bowron*, 30 F.App'x 373 (6th Cir. 2002)). Although *Gordon* discussed notice and opportunity in a footnote, the district court declined to impose sanctions in that order. 2009 WL 1850309 *25.

*Conz*, and its subsequent history, actually supports the opposite conclusion: that Michael Grabhorn was on notice of the potential for statutory sanctions upon receipt of the magistrate judge's recommendation to impose statutory sanctions, and he had a reasonable opportunity to be heard in filing objections to the recommendation.

In *Conz*, the magistrate judge recommended statutory sanctions and discussed notice and opportunity to be heard in a footnote,

14

> Although [defense counsel] sought sanctions against [plaintiff's counsel], they did not invoke section 1927. Consequently, imposition of such sanctions would be in the nature of a *sua sponte* act. This report and recommendation gives [plaintiff's counsel] notice of the possibility of such sanctions, and he has the ten-day period provided by law in which to object.

*Conz v. Lady*, 2000 U.S. Dist. LEXIS 22137 22 n.1 (W.D. Mich. Jan. 25, 2000) (citing Fed. R. Civ. P. 72(b)).[6] The district court adopted that report and recommendation and imposed sanctions. *Conz v. Lady*, 2000 U.S. Dist. LEXIS 22138 (W.D. Mich. Feb. 29, 2000) (rejecting counsel's lack of notice and opportunity argument as "disingenuous").

The sanctioned attorney appealed. The court of appeals found no abuse of discretion for the district court's order imposing sanctions:

> In any event, after the Magistrate Judge recommended that the District Court impose sanctions under 28 U.S.C. § 1927, Mr. Davis could no longer argue that he was without notice of the District Court's intention to consider doing so. Moreover, the fact that he filed objections to the report and recommendation belies his contention that he was not afforded an opportunity to be heard, which is simply the opportunity to make arguments and present evidence, not the right, literally to speak to the court.

*Davis*, 30 F.App'x at 375.

The Court finds that Michael Grabhorn was on notice of the potential imposition of statutory sanctions once the magistrate judge recommended statutory sanctions for his conduct during the Dr. Semble's attempted deposition. The Court finds that Michael Grabhorn had a reasonable opportunity to be heard regarding sanctions for his conduct during the Dr. Semble's attempted deposition because he filed an objection.

### 2. Sanctionable conduct

Second, Graves objects to the imposition of sanctions by arguing that the conduct "did not rise to the level of sanctionable conduct." Pl.'s 2nd Obj. 4 – 8. Graves argues that the

---
[6] The previous version of Rule 72(b) imposed a ten-day deadline for filing objections to a magistrate judge's order on nondispositive matters. Now, the rule imposes a fourteen-day deadline. Fed. R. Civ. P. 72(a) (2009 Amendment).

15

magistrate judge's three factual findings regarding Michael Grabhorn's conduct during Dr. Semble's deposition were insufficient to warrant sanctions. Specifically, Graves's counsel points to the findings that Michael Grabhorn had "no legitimate reason" to not use Dr. Semble's professional title when addressing him; that Michael Grabhorn disparaged Dr. Semble's intelligence by "asking him if he needed a dictionary to define the term 'prepare;'" and "this series of events was not inadvertent" because Michael Grabhorn laughed when Dr. Semble "stormed out of the deposition room in a rage." Order Rec. Sanct. 17.

The Court disagrees with Graves's argument that this conduct did not warrant sanctions. The magistrate judge described Dr. Semble's deposition as follows:

> Review of the video recording of the deposition persuades the Court that Graves' counsel, from the very outset of the deposition proceedings, *intended to deliberately provoke* Dr. Semble by conducting his communications with the doctor in both an unprofessional and overtly abusive fashion that the Court finds was *specifically intended* to cause the doctor maximum and unnecessary psychological distress. No legitimate reason existed to deliberately refuse to address Dr. Semble as such, particularly after the doctor reasonably requested that counsel do so. Likewise, disparaging the doctor's intelligence by asking him if he needed a dictionary to define the term 'prepare' also was a tactic intended to provoke the doctor, who not surprisingly became increasingly upset with the overtly disrespectful manner in which he was being treated by counsel.
>
> The fact that this series of events was *not inadvertent, or merely negligent*, is confirmed first by the obvious amusement of Graves' counsel who clearly can be [heard] on the video recording laughing at the doctor's discomfort after the doctor spontaneously stormed out of the deposition room in a rage. Second, this very sequence of events was submitted by Graves as the primary basis on which to entirely exclude the future testimony of the doctor, which the Court finds was the *obvious intent* of counsel for Graves from the outset of the deposition—to provoke a situation that could be the basis for the doctor's exclusion as an expert witness.
>
> While the Court encourages vigorous advocacy at all stages of the litigation before it, what occurred during the attempted deposition of Dr. Semble clearly crossed over the line and became vexatious.

*Id.* at 16 – 17 (emphasis added). Like the magistrate judge, the Court has reviewed the video, and the Court agrees that Michael Grabhorn's conduct in the deposition crossed a line.

16

Dr. Semble was noticeably agitated from the beginning of the tape. That agitation was understandable given his and Jacqueline Herring's surprise that Michael Grabhorn did not appear in person, given the technical difficulties that plagued each side's ability to hear questions and answers, *see, e.g.*, Tr. 10 – 11, and given the "substantial and contentious history" between Dr. Semble and Michael Grabhorn. Again, Michael Grabhorn did not object to the magistrate's finding that he and Dr. Semble have a "substantial and contentious history."

This "substantial and contentious history" came to a head on January 14, 2016. This "substantial and contentious history" culminated with Michael Grabhorn calling Dr. Semble "Mr. Semble;" telling Dr. Semble that he would "be happy to get a copy of Webster's Dictionary;" and engaging in an aggressive back and forth over the difference between Dr. Semble's notes and "the file" and whether "the file" was Dr. Semble's or Standard's:

> Q: Now, did you prepare for your deposition today?
> A: I looked at my notes.
> Q: So that's a yes. You're stating that you did in fact prepare for your deposition today; is that correct?
> A: I don't know what the word prepare means. I looked at my notes.
> Q: Well, I'll be happy to get a copy of Webster's Dictionary, but what part of prepare do you not understand?
> Attorney Herring: He's answered the question.
> Q: No. I am asking him why he doesn't understand the word prepared so I could sit there and elaborate on my question. So, once again, with respect to the word prepare, what part of that do you not understand? What did you do today to get ready to testify?
> A: Read my notes.
> Q: And where are these notes today?
> A: The notes is the file. There's no – I don't have any notes –
> Q: Okay.
> A: – other than the file. That's what I meant, the file.
> Q: Okay. So the notes that are contained in the file, where are those notes today?
> A: I misspoke. It's not notes. It's the file itself.
> Q: Okay. Whether it's notes or the file itself, where is that file today?
> Attorney Herring: It's right here.
> A: I don't hold on to the file. I don't hold on to the file. My attorney's advised me that she has presented the file here.

> Q: Okay. So I am confused. I asked you what you did to prepare for your deposition today, your testimony. You initially told me it was notes, you indicated you misspoke and that it was the file that you reviewed to prepare today, your file. Now am I to understand it's not your file, it's your counsel's file?
> Attorney Herring: Objection. You're mischaracterizing his testimony. He – he clarified that what he meant by notes was the file. The file is right here.
> Q: If he doesn't understand it, he can ask me. Please, no more speaking objections, once again. Please help me out here. Who's file is this? Is this your file?
> (Dr. Semble whispers to Attorney Herring)
> Q: No. You may not speak with your attorney. What question did he just ask you? Please repeat it on the record. What question did he – what's stated to his attorney, please get it on the record.
> Attorney Herring: He said you're making this very difficult for him.
> Q: Because I asked him where he had his records?
> Attorney Herring: You know, he's here –
> A: I'm here for substance of the matters. I'm not here to go over Webster's Dictionary. I looked at the file.
> Q: Okay. That's what I'm just clarifying. So this is your file, correct?
> A: No, it's not my file. It's Standard's file.
> Q: Whose file is it?
> A: Standard's file.
> Q: Okay. It's Standard's file. So how did you come to review Standard's file?
> Attorney Herring: Can we – we need to take a break for a minute.
> A: I'm not going to do this. I'm not.

Semble Dep. Tr. 13 – 16 (DN 93-1). The transcript does not tell the whole story, however. Far from Graves's counsel's assertion that "The deposition was proceeding appropriately – minus the couple of minor hiccups that were quickly resolved," the video demonstrates that Michael Grabhorn began the deposition with an aggressive, disrespectful tone, escalated his sarcasm in an obvious effort to provoke Dr. Semble, and laughed when he successfully provoked Dr. Semble into saying, "I'm not going to do this. I'm not."

Dr. Semble's agitation did not justify Michael Grabhorn's "aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Under an objective standard, Michael Grabhorn's conduct in the deposition fell far "short of the obligations owed by a member of the bar to the court" and caused

additional expense to Standard. *Rentz v. Dynasty Apparel Indust., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009). This conduct—which the magistrate judge found was intentional, and the Court agrees was intentional—warrants sanctions.

The Court will overrule Graves's second objection. The Court will adopt the magistrate judge's conclusion that Michael Grabhorn's deposition conduct was sanctionable behavior. The Court will sanction Michael Grabhorn under 28 U.S.C. § 1927 for this conduct. The Court will grant Standard its reasonable attorney fees and costs incurred in responding to the plaintiff's motion for sanctions.

### 3. Limiting Dr. Semble's future deposition

Third, Graves objects to the magistrate judge's order that Dr. Semble's resumed deposition "shall be limited to a time period of three hours with a 10 minute break on the hour." *Id.* at 15. Graves argues that "this portion of the order ignores the Federal Rules mandate that depositions are to proceed for up to seven (7) hours." Pl.'s 2nd Obj. 9.

Rule 30(d) says: "Unless otherwise stipulated or *ordered by the court*, a deposition is limited to one day of 7 hours." Fed. R. Civ. P. 30(d) (emphasis added).

Graves has not pointed to any part of this portion of the magistrate judge's order that was "clearly erroneous" or "contrary to law." The Court will overrule Graves's objection to the magistrate judge's order limiting the deposition of Dr. Semble to three hours. The Court will adopt the magistrate judge's order regarding Dr. Semble's deposition.

The Court will grant Graves's second motion to stay. Graves's counsel will have thirty days from the entry of this order to depose Dr. Semble, if that still occurs. To be clear, the Court reiterates the magistrate judge's instruction that Dr. Semble's deposition

> shall be scheduled … at a time and place mutually agreeable to the parties and shall be conducted in accordance not only with the requirement of the Federal

19

Rules of Civil Procedure and the Kentucky Rules of Professional Conduct set
forth in Supreme Court Rule 3.130, but also in accordance with the aspirational
guidelines of the Kentucky Bar Association's Code of Professional Courtesy.

Order Rec. Sanct. 13.

VI.     Conclusion

The Court will grant Graves's motion for partial judgment on the pleadings. The Court will dismiss Standard's unjust enrichment claim, with prejudice.

The Court will deny the second motion to remand.

The Court will overrule the Plaintiff's first objection to the magistrate judge's order denying the plaintiff's requested extension of time. The Court will order Graves to respond to summary judgment within fourteen days. The Court will deny the first motion to stay as moot.

The Court will overrule the Plaintiff's second objection to the magistrate judge's order recommending the imposition of sanctions. The Court will order Graves's counsel to pay for the cost of audiovisual recording of the January 14, 2016 deposition, and the Court will order Graves's counsel to pay for the cost of audiovisual recording any future deposition of Dr. Semble. The Court will impose sanctions under 28 U.S.C. § 1927 against Michael Grabhorn for his conduct during Dr. Semble's deposition. The Court will award Standard its reasonable attorney fees and costs incurred in responding to the plaintiff's motion for sanctions.

The Court will grant Plaintiff's second motion to stay. The Court will order any such future deposition of Dr. Semble shall occur within thirty days of the entry of the order, and in accordance with this opinion.

August 19, 2016

Charles R. Simpson III, Senior Judge
United States District Court

20