UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LINDA GRAVES                                                                                 PLAINTIFF

v.                                          CIVIL ACTION NO. 3:14-cv-00558-CRS-DW

STANDARD INSURANCE COMPANY                              DEFENDANT

Memorandum Opinion

I.      Introduction

This matter is before the Court on the motion of Defendant Standard Insurance Company ("Standard") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 101. Plaintiff Linda Graves responded, ECF No. 122, and Standard replied, ECF No. 124. Graves submitted a cross-motion for partial summary judgment, ECF No. 123. Standard responded, ECF No. 125, and Graves replied, ECF No. 126. Because these motions involve the same facts and legal issues, the Court will address them in a single memorandum opinion and order.

For the reasons stated below, the Court will grant Standard's motion for summary judgment on its counterclaim for breach of contract (Count I). The Court will dismiss Standard's counterclaims for restitution and recoupment (Count III) and for declaratory relief (Count IV). The Court will deny Standard's motion for summary judgment on Graves's claims for breach of contract (Count I) and for breach of the duty of good faith and fair dealing (Count II). The Court will deny Graves's motion for partial summary judgment.

II.     Background

This case initially arose from the denial of long term disability benefits under an insurance policy issued by Standard.

1

A.     Standard's Insurance Policy

Standard issued Policy Number 645259-C ("the Group Policy") to Jefferson County Public Schools as Policyholder to provide long term disability insurance to its employees. Ex. A 2, 8, ECF No. 101-2. Jefferson County Public Schools paid for the coverage of its eligible employees. *Id*. at 9, 30.

The Group Policy provided that employees could only receive benefits for five years or less, or until he or she turned seventy years old. *Id*. To begin receiving disability benefits under the Group Policy, employees must have been continuously disabled during a benefits waiting period. *Id*. at 29. The benefits waiting period was defined as the later of 45 working days or the date that the employee's accumulated sick leave ended. *Id*. at 9. During the first six months that an employee was disabled, he or she could receive a long term, monthly disability benefit consisting of 66 2/3% of the first $6,000 of his or her pre-disability earnings. *Id*. After those first six months, employees were eligible to receive a long term, monthly disability benefit consisting of 66 2/3% of the first $6,000 of his or her pre-disability earnings reduced by his or her deductible income. *Id*. Thus, after six months, the maximum monthly disability benefit an employee could receive was $4,000, before being reduced by deductible income. *Id*. The minimum monthly disability benefit an employee could receive was the greater of $100 or 10% of his or her long term disability benefit, before it was reduced by his or her deductible income. *Id*.

In relevant part, deductible income was defined as including "any amount you, your spouse, or your child under age 18 receive because of your disability or retirement under . . . [t]he Federal Social Security Act . . . or . . . any similar plan or act." *Id*. at 2. Deductible income also included "any disability or retirement benefits you receive or are eligible to receive under

2

your Employer's retirement plan, including a public employee retirement system, a state teacher retirement system, and a plan arranged and maintained by a union or employee association for the benefit of its members." *Id*. at 3.

Employees receiving disability benefits under the Group Policy were required to notify Standard of any deductible income that they received, which would reduce the amount of their disability payments for which they were eligible. *Id*. at 21. Because employees could receive deductible income after they had received their long term disability benefits, employees were required to repay Standard for any overpayment of their claims. *Id*. If they were paid deductible income in a lump sum or by a method other than monthly, Standard determined the employees' long term disability benefit payments using a prorated amount. *Id*.

If employees did not immediately repay the insurance company the overpayment of their disability claims, Standard would withhold their long term disability benefits until the claims had been repaid in full. *Id*. at 22. Standard reserved the right to charge an employee interest on any overpayment that was not repaid within 30 days. *Id*.

During the first twenty-four months of receiving disability benefits, employees were required to meet the "own occupation" definition of disability, which was defined as the employee being disabled from their own occupations. *Id*. at 8, 14. After twenty-four months of receiving disability benefits, employees were then required to meet a more stringent definition of disability, the "any occupation" definition of disability. *Id*. The "any occupation" definition of disability was defined as the employees being "[d]isabled from all occupations," not just their own occupations. *Id*. at 15.

B.     Graves's Insurance Claim

Graves began working for Jefferson County Public Schools in June 1993 as a school bus driver. Mem. Op., ECF No. 52; King. Aff., ECF No. 101-9. As an employee of Jefferson County Public Schools, Graves was insured under the Group Policy. Standard's Answer ¶ 8, ECF No. 67. Graves submitted a claim to Standard for long term disability benefits under the Group Policy. *Id.* ¶ 9. Standard approved Graves's claim under the Group Policy's "own occupation" definition of disability in May 2011. *Id.*; Gougler Decl. 1, ECF No. 101-3.

In approving her disability claim, Standard determined that Graves had become disabled in December 2010. Gougler Decl. 1, ECF No. 101-3; Letter 5/23/2011, ECF No. 101-4. Standard also determined that she had become eligible for long term disability benefits in April 2011, the date when her sick leave from Jefferson County Public Schools ended. *Id*. Standard set her gross monthly benefit at $1,712.86. Gougler Decl. 1, ECF No. 101-3; Letter 5/23/2011, ECF No. 101-4. This amount only included withdrawals for FICA and Medicare. Gougler Decl. 1, ECF No. 101-3. The amount of the disability benefit payment was not reduced by any deductible income. *See id.*

In May 2011, after Standard had begun to pay her long term disability benefits, Graves signed a Repayment Agreement. Repayment Agreement, ECF No. 101-13. In this agreement, Graves acknowledged and agreed that she would repay Standard for any deductible income she received that would result in an overpayment of her benefits. *Id*. At the time she signed the Repayment Agreement, Graves stated that she had applied for but was not receiving any disability benefits from the Social Security Administration (SSA) or any disability benefits provided by the state. *Id*.

4

In March 2013, Standard sent Graves a letter about a change in her benefits under the Group Policy. Letter 3/26/13, ECF No. 101-5. Standard explained that in April 2013—twenty-four months after Graves's disability benefits became payable—she was required to meet the more stringent "any occupation" definition of disability, as required by the terms of the Group Policy. Letter 3/26/13, ECF No. 101-5; Gougler Decl. 2, ECF No. 101-3; Ex. A 8, ECF No. 101-2. Standard stated that it would consider factors such as Graves's medical condition, skills and knowledge, prior occupations, and jobs she could perform in determining whether she was eligible for continued benefits. Letter 3/26/13, ECF No. 101-5.

In October 2013, Standard sent Graves another letter explaining that it had determined she did not meet the "any occupation" definition of disability and that her claim would close that month. Letter 10/17/13, ECF No. 101-7. Between April 2011 and October 2013, Standard paid Graves a total of $52,269.81 in monthly long term disability benefits. Gougler Decl. 3, ECF No. 101-3.

In response to the denial of her continued disability benefits, Graves filed suit against Standard in the Jefferson County, Kentucky Circuit Court in February 2014. Graves's Am. Compl. 1, ECF No. 1-3. Graves alleges the following four causes of action in her complaint: first, breach of contract (Count I), second, breach of the duty of good faith and fair dealing (Count II), third, violation of Kentucky Revised Statute § 304.12-230 (Kentucky's "Unfair Claim Settlement Practices Act") (Count III), and fourth, violation of Kentucky Revised Statute § 367.170 (Kentucky's "Consumer Protection Act") (Count IV). *Id*. at 2–11. She seeks compensatory, equitable, and punitive relief. *Id*. at 11.

Six months later, in August 2014, Standard timely removed the case to this Court under diversity jurisdiction. *See* Standard's Not. of Removal, ECF No. 1; Mem. Op. & Order 1, ECF

No. 18. Graves unsuccessfully attempted to have her case remanded to state court. Graves's Mot. to Remand, ECF No. 13; Opin. & Or. Denying Mot. to Remand, ECF No. 18.

While Graves's case was pending, in June 2014, Kentucky Retirement Systems (KRS) notified Graves that her application for disability benefits had been approved and that her benefits would be paid retroactively for the period beginning in May 2011 under Kentucky Revised Statute § 61.600. KRS Or. 3, ECF No. 101-10. Graves's monthly KRS disability benefit was $1,404.00. Standard's Ctrclms. 22, ECF No. 67; Graves's Answer 3, ECF No. 69; Graves's Suppl. Resp. to Interrog. 6, ECF No. 101-28.

In December 2014, the SSA notified Graves that her application for Social Security disability insurance (SSDI) had been approved and that her benefits would be paid retroactively for the period beginning March 2013. Standard's Countercl. ¶ 28, ECF No. 67; Graves's Answer ¶ 29, ECF No. 69. Standard's monthly SSDI payment was $1,072.00. SSA Letter 3, ECF No. 101-12.

In August 2015, Standard filed counterclaims against Graves for breach of contract (Count I), unjust enrichment (Count II), restitution and recoupment (Count III), and declaratory relief (Count IV). Am. Answer & Countercl. 23–26, ECF No. 67. Standard's counterclaims arise from Graves's receiving KRS and SSDI benefits for the time period for which she was also receiving benefits under the Group Policy. *Id*. at 23. Standard asserts that Graves was overpaid under the Group Policy because the amount of these additional benefits was never deducted from her long term disability payments. *Id*. Standard avers that it is entitled to recover and recoup the overpaid amount. *Id*.

Graves moved for judgment on the pleadings for Standard's counterclaim for unjust enrichment. Graves's Mot. Partial J. Pleadings, ECF No. 81. This Court granted Graves's motion

6

for judgment on the pleadings and dismissed Standard's counterclaim for unjust enrichment. Or., ECF No. 120. The Court explained that under Kentucky law, an unjust enrichment claim cannot stand when a contract is the subject of the dispute, and that, in this case, the unjust enrichment counterclaim arose from the Group Policy, a contract. Mem. Op. 3, 5, ECF No. 119.

In sum, Graves's four claims against Standard remain pending: breach of contract, breach of the duty of good faith and fair dealing, violation of Kentucky's Unfair Claim Settlement Practices Act, and violation of Kentucky's Consumer Protection Act. Graves's Am. Compl. 2–11, ECF No. 1-3. Three of Standard's counterclaims remain pending: breach of contract, restitution and recoupment, and declaratory relief. Am. Answer & Countercl. 23–26, ECF No. 67, Or. ECF No. 120. Standard now moves for summary judgment on its counterclaims and on Graves's claims for breach of contract and breach of the duty of good faith and fair dealing. Standard's Mot. Summ. J. 1–2, ECF No. 101. In response, Graves moves for summary judgment in her favor on Standard's counterclaims. Graves's Resp. Opp. Mot. Summ. J. 7–8, ECF No. 123.

III. <u>Discussion</u>

Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must

7

view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Standard argues that, given the available evidence, it is entitled to summary judgment on its counterclaims to recover overpaid benefits and that summary judgment should be granted because Graves cannot establish her claims for breach of contract or breach of the duty of good faith and fair dealing. Standard's Mem. Supp. Mot. Summ. J. 8, 12, ECF No. 101-1. Graves submits that Standard "has failed to meet its burden to substantiate the Court entering summary judgment in its favor . . . Ms. Graves requests the Court enter judgment in her favor and <u>*grant*</u> her cross-motion for summary judgment on Standard's counterclaims – Counts I, III, IV." Graves's Resp. Opp. Mot. Summ. J. 17, ECF No. 123.

    A.    <u>Standard's Counterclaims to Recover Overpaid Benefits</u>

As noted above, three of Standard's counterclaims remain pending: breach of contract, restitution and recoupment, and declaratory relief. Standard's Am. Answer & Countercl. 23–26, ECF No. 67; Or. ECF No. 120.

    *i. Breach of Contract*

Regarding its breach of contract counterclaim, Standard argues, "Due to her receipt of benefits from the SSA and KRS, Graves received an overpayment of [long term disability] Benefits that she failed to repay as required by the Group Policy and acknowledged by her in the written Repayment Agreement she signed." Standard's Mem. Supp. Mot. Summ. J. 8, ECF No. 101-1. To establish a breach of contract claim under Kentucky law, the plaintiff must show (1) that a contract existed, (2) that the defendant breached the contract, and (3) that he suffered an injury as a result of the defendant's breach of the contract. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).

8

Here, taking all facts in the light most favorable to Graves, there is not a genuine dispute of material fact as to Standard's breach of contract counterclaim. As this Court previously explained in its dismissal of Standard's unjust enrichment counterclaim, the Group Policy is a contract. Mem. Op. 3, 5, ECF No. 119. Under the Group Policy, employees receiving disability benefits were required to notify Standard of any deductible income that they garnered, which would reduce their monthly disability payments under the policy. Ex. A 21, ECF No. 101-2. Deductible income was defined as including benefits from the SSA and disability benefits from a public retirement plan. *Id*. at 2–3. Under the Group Policy, if employees received deductible income after Standard had paid them their disability benefits, they were required to repay the insurance company the amount of the overpayment of their disability claims. *Id*. Graves acknowledged and accepted these terms when she signed the Repayment Agreement. Repayment Agreement, ECF No. 101-13. Graves breached this agreement when she did not repay Standard for her KRS benefits or SSDI payments that were retroactively awarded for the period that she also received benefits under the Group Policy. *See* KRS Or. 3, ECF No. 101-10; Standard's Countercl. ¶ 28, ECF No. 67; Graves's Answer ¶ 29, ECF No. 69. Standard has been harmed by this breach in the amount of the overpaid benefits. As there is not a genuine dispute of material fact as to whether Graves breached her contract with Standard, summary judgment in favor of Standard on this counterclaim is appropriate.

Given that summary judgment in favor of Standard on its breach of contract counterclaim is appropriate, Standard is entitled to $40,633.75 from Graves, the amount that she was overpaid as a result of her receiving KRS benefits and SSDI payments. There are three different periods of time that are relevant to this calculation. The first is between December 11, 2010 and June 11, 2011, the time period after Graves first became disabled but before she retroactively received

KRS or SSDI benefits. Graves was not paid any deductible income between December 11, 2010 and June 11, 2011, and thus there is no corresponding reduction in her long term disability benefits for this period.

The second period of time is between June 12, 2011 and February 28, 2013, which is when Graves received only KRS benefits, albeit retroactively. KRS Or. 3, ECF No. 101-10; Standard's Ctrclms. 22, ECF No. 67; Graves's Answer 3, ECF No. 69; Graves's Suppl. Resp. to Interrog. 6, ECF No. 101-28. Her monthly KRS benefit was $1,404.00. *Id*. Her overpayment of benefits for between June 12, 2011 and February 28, 2013 equaled $28,969.20 (($1,404.00 per month x 20 months) + (($1,404.00 per month/30 days) x 19 days)).

The final period of time is between March 1, 2013 and October 17, 2013. During this period, Graves continued to receive KRS benefits. *Id*. She also began receiving $1,072.00 in monthly payments from the SSA. SSA Letter 3, ECF No. 101-12. Her combined monthly benefits from the KRS and SSA equaled $2,476.00 per month. This deductible income from KRS and the SSA exceeded her monthly disability benefit under the Group Policy ($1,712.86 per month). Because her deductible income from KRS and the SSA exceeded her monthly disability benefit under the Group Policy, Graves could only receive the minimum long term disability benefit, 10% of $1,712.86 or $171.29. Ex. A 9, ECF No. 101-2. Her monthly overpayment for this time period was the difference between her monthly disability benefit under the Group Policy and the minimum long term disability benefit, which was $1,541.57 per month. The overpayment from March 2013 to October 17, 2013 equals $11,664.00 (($1,541.57 per month x 7 months) + ($1,541.57 per month/30 days x 17 days)).

In sum, Graves's overpayment for these three periods equals $40.644.75.

```
12/11/2010 to 06/11/2011      $0.00
06/12/2011 to 02/28/2013      $28,969.20
03/01/2013 to 10/17/2013      $11,664.55
              Total           $40,644.75
```

Standard is entitled to this amount.

    *ii. Restitution and Recoupment*

Concerning its counterclaim for restitution and recoupment, Standard explains that Graves's benefits from the SSA, the KRS, and the Group Policy exceed her salary as an employee of Jefferson County Public Schools. Standard's Mem. Supp. Mot. Summ. J. 11, ECF No. 101-1. Standard maintains that "[i]t would be inequitable to permit Graves to retain benefits exceeding 100% of her [Jefferson County Public Schools] salary, in excess of the coverage provided and paid for by [Jefferson County Public Schools] under the Group Policy, at Standard's expense, through overpaid [long term disability] Benefits that Graves obtained and accepted with full knowledge of her obligation to repay overpayments that result from retroactive awards of Deductible Income." *Id.*

Standard's claimed remedy for "recoupment" and "restitution" is superfluous, as it seeks the same relief as its breach of contract counterclaim. Moreover, Standard provides no Kentucky case law in support of this counterclaim. Therefore, the Court will dismiss this counterclaim.

    *iii. Declaratory Relief*

Regarding its counterclaim for declaratory relief, Standard asserts that declaratory relief should be granted in its favor "because the amount of Graves's overpayment exceeds any potential recovery of [long term disability] Benefits she may have under the Group Policy, no benefits are owed and Graves has no viable claim against Standard." Standard's Mem. Supp. Mot. Summ. J. 12, ECF No. 101-1. Standard explains further that if Graves were to "satisfy the Group Policy's terms and conditions for payment of the LTD Benefit, her payable benefit would

11

be the Minimum LTD Benefit of $171.29, for a remaining total of $5,047.35," which is less than the $40,644.75 that she owes the insurance company. *Id*. at 14.

Standard's claimed remedy for "declaratory relief," like its claims for "recoupment" and "restitution," seeks the same relief as its breach of contract counterclaim. Thus, the Court will also dismiss this counterclaim.

*iv. Graves's response to Standard's motion for summary judgment on its counterclams*

Graves unsuccessfully asserts four arguments in her response to Standard's motion for summary judgment. As Standard's counterclaims for restitution and recoupment, and declaratory relief are dismissed, the Court will only address Graves's arguments that concern Standard's breach of contract counterclaim. Graves first asserts that Standard's counterclaim asserting that Graves was overpaid is time-barred under Kentucky law. Graves's Resp. Opp. Mot. Summ. J. 8, ECF No. 123. She contends that the Group Policy falls into the category of "health insurance" under Kentucky Revised Statute § 304.5-040. *Id*. at 9. Kentucky Revised Statute § 304.4-040 states, "'Health insurance' is insurance of human beings against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto." Graves then points to Kentucky Revised Statute § 304.14-375, which places a two year statute of limitations on claims for reimbursement for overpayment of a health insurance claim. Graves's Resp. Opp. Mot. Summ. J. 9, ECF No. 123. Because Standard filed its counterclaims four years after it approved her long term disability claim, Graves maintains that the insurance company cannot now assert that she was improperly overpaid. *Id*.

Standard, however, asserts that the statutory time limit for health care reimbursement does not apply its counterclaim for breach of contract. Reply 11, ECF No. 124. As defined by

Kentucky Revised Statute § 304.4-040, "health insurance" refers to payments that are made based on the existence of a health condition or to cover the cost of a health care services. In contrast, benefits paid under the Group Policy were intended to supplement disabled employees' incomes, and thus it is not "health insurance" subject to the two year statute of limitations for reimbursements. Ex. A 2, 8, ECF No. 101-2.

Graves secondly argues that Standard miscalculated any alleged overpayment to her. Graves's Resp. Opp. Mot. Summ. J. 10–14, ECF No. 123. Graves asserts that Standard miscalculated her monthly long term disability benefits and that Standard should have paid her $600.00 more a month in benefits because she was paid hourly. *Id.* at 10. In response, Standard contends that it correctly calculated the amount of long term disability benefits to which Graves was entitled based on the Group Policy's definition of predisability earnings. Reply 14, ECF No. 124.

Jefferson County Public Schools affirmed that Graves was an hourly employee with an annual salary of $29,787.31. DCPS Dep. 8–11, ECF No. 101-6. As defined in the Group Policy, her predisability earnings were $2,569.16 per month, after fringe benefits were added to her monthly earnings rate. Ex. A 4, ECF No. 101-2. Under the Group Policy, Graves was entitled to 66 2/3% of this amount in long term disability benefits, which totals $1,712.86, which Standard paid her. *See* Ex. A 9, ECF No. 101-2.

Graves also asserts that Standard miscalculated the overpayment of her monthly long term disability benefits because it should have begun calculating her period of disability after the end of the benefits waiting period, rather than when it first considered her disabled, in December 2010. *Id.* at 10–11. If Standard considered Graves disabled after the end of the benefits waiting period in April 2011, there would have been more time when her long term disability benefits

were not required to be reduced by her deductible income. *Id*. But, as noted by Standard, Reply 12, ECF No. 24, the Group Policy provides, "There is no reduction for Deductible Income for Graves's first six months of Disability." Ex. A 9, ECF No. 101-2. The policy does not provide that deductible income reduces monthly benefits beginning when the benefits are payable or received, as Graves suggests.

Graves additionally contends that Standard overvalued the amount of SSDI payments she received, which improperly increases the amount she owes in repayment of benefits. Graves's Resp. Opp. Mot. Summ. J. 12, ECF No. 123. Graves explains that she actually received fewer SSDI payments than Standard alleges because she had to pay a representative's fee of $5,404.00 to receive benefits from the SSA. *Id*. Standard maintains that her SSDI payments were correctly applied to reduce the amount of her long term disability payments under the Group Policy. Reply 11, ECF No. 11.

Graves's argument goes nowhere. Her benefits from the SSA were retroactively awarded for 22 months, between March 2013 and December 2014. Ex. B 2, ECF No. 122-2. The amount of her long term disability benefits, however, is reduced only by her SSDI payments that she received for 6 months, between March 2013 and October 17, 2013. *See id*.; Letter 10/17/13, ECF No. 101-7. Because the representative's fee was calculated as 25% of the total of her retroactively awarded SSDI payments, Ex. B 2, ECF No. 122-2, the smaller overpayment from her SSDI payments does not include the entire amount of the $5,404.00 representative's fee.

Moreover, if the $5,404.00 representative's fee were prorated over the entire 22-month period during which Graves received retroactive SSDI payments, the representative's fee would total $245.64 per month. If this amount is subtracted from the monthly SSDI benefit of $1,072.00, she would have received $826.36 per month in SSDI payments. Combined with her

14

KRS benefit of $1,404.00 per month, she would have received $2,230.36 in deductible income per month, which exceeded her long term disability benefit of $1,712.86. Because her deductible income from KRS and the SSA still would have exceeded her monthly disability benefit under the Group Policy, Graves could only receive the minimum long term disability benefit, 10% of $1,712.86 or $171.29. Ex. A 9, ECF No. 101-2. Such would lead to the same calculations as above.

Graves also asserts that Standard miscalculated the overpayment of her long term disability payment because it did not properly reduce her benefits under the Group Policy by the amount she received from KRS. *Id*. at 13–14. Graves claims that Standard should only be permitted to reduce her long term disability benefit by the amount of KRS benefits attributable only to her employer's contribution rates. *Id*. Graves argues that Standard should not be permitted to lower the amount of her long term disability benefit by the money she was required to pay into KRS. *Id*. at 13. Standard, however, argues that all KRS benefits are deductible income and reduce the amount of her long term disability benefits under the Group Policy. Reply 10, ECF No. 124.

In relevant part, the Group Policy defines deductible income as

"[a]ny disability or retirement benefits you receive or are eligible to receive under your Employer's retirement plan, including a public employee retirement system, a state teacher retirement system, and a plan arranged and maintained by a union or employee association for the benefit of its members. You and your Employer's contributions will be considered as distributed simultaneously throughout your lifetime, regardless of how funds are distributed from the retirement plan."

Ex. A 3, ECF No. 101-2. This language recognizes that disability benefits could have more than one source of contributions, including the employee's own contributions. But under this definition, the employee's contributions are included as part of deductible income. Therefore,

regardless of its source, all of Graves's KRS benefits were correctly applied as part of "deductible income" under the Group Policy.

Graves thirdly contends that Standard previously breached the Group Policy by terminating her long term disability benefits, which relieves her of the duty to perform. Graves's Resp. Opp. Mot. Summ. J. 14–15, ECF No. 123. In response, Standard argues that "Graves cannot use a purported breach of Standard's future duties to excuse her failure to repay previously received overpaid benefits that she is not entitled to retain." Reply 4, ECF No. 124.

Standard's potential breach of the Group Policy does not relieve Graves of her obligation to repay the overpayment of her long term disability benefits. *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 Fed. Appx. 38, 46 (6th Cir. 2007) (finding recover of overpayments proper even though termination of benefits was arbitrary and capricious). Therefore, even if Graves was owed benefits under the Group Policy, she would still owe Standard reimbursement, and summary judgment is appropriate for the breach of contract counterclaim in favor of Standard.

Graves fourthly argues that, in not repaying Standard the money she received from KRS and the SSA, she did nothing more than attempt to mitigate her damages. Graves's Resp. Opp. Mot. Summ. J. 15–16, ECF No. 123. Standard maintains, "This is not mitigating damages but circumventing the court system through the illicit preemptive collection of a non-existent judgment for a perceived but not judicially-established wrong." Reply 2, ECF No. 124. Regardless, Graves's final argument in her defense brings to mind the saying, "When the facts are on your side, pound the facts. When the law is on your side, pound the law. When neither is on your side, pound the table." Graves is doing nothing more than pounding the table. There are no facts or law supporting this argument. As such, it fails.

  B. <u>Graves's Claims for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing</u>

Standard argues that summary judgment should be granted in its favor on Graves's claims for breach of contract and for breach of the duty of good faith and fair dealing.[1] Standard's Mem. Supp. Mot. Summ. J. 12, ECF No. 101-1. Turning to Graves's claim for breach of contract, Standard does not assert that Graves cannot meet her burden of proof for this claim based on the available evidence. Rather, Standard argues that Graves cannot establish that it breached the Group Policy because no benefits can be paid when a repayment is owed under the policy and she owes a repayment of benefits. *Id*.

Standard relies on the following provision of the Group Policy in support of this argument:

> We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us. You will not receive any LTD Benefits until we have been repaid in full. In the meantime, any LTD Benefits paid, including the Minimum LTD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

*Id*.; Ex. A 22, ECF No. 101-2. This provision does not bar an employee receiving benefits under the Group Policy from asserting a breach of contract claim against Standard if he or she owes overpaid benefits. Ex. A 22, ECF No. 101-2. Instead, this accounting provision only requires the employee to immediately repay the overpaid benefits before receiving any additional benefits under the Group Policy. *Id*. Standard attempts to contort this provision into a bar for its own performance under the contract. This is an untenable reading of the Group Policy. As such,

---

[1] Graves's claim for breach of contract alleges that Standard breached the Group Policy by "terminating Plaintiff's monthly disability income benefit, not accurately calculating the monthly income benefit, and not complying with the terms of the insurance policy in the administration of her claim." Am. Compl. ¶ 11, ECF No. 1-3.

Standard's motion for summary judgment on Graves's claim for breach of contract fails as a matter of law.

Standard further maintains that Graves's claim for breach of the duty of good faith and fair dealing fails as a matter of law because she cannot establish breach of contract. *Id*. at 14–15. Because Standard relies on Graves's breach of contract claim and because its motion for summary judgment on its breach of contract claim fails as a matter of law, summary judgment is likewise inappropriate at this time on her claim for breach of the duty of good faith and fair dealing.

      C.      Graves's Claims for Violations of Kentucky's Unfair Claim Settlement Practices Act and Consumer Protection Act

Standard requests that summary judgment be entered on "all claims brought by Graves in her Amended Complaint." Standard's Mem. Supp. Mot. Summ. J. 16, ECF No. 101-1. Based upon the record in front of the court, Graves's claims for violations of Kentucky's Unfair Claim Settlement Practices Act and for violations of Kentucky's Consumer Protection Act remain pending. Standard provided this Court with the state court record, which included numerous motions to dismiss and a proposed order for the dismissal of these claims. *See e.g.*, Ex. C 18–20, 22–36, 45, 229–237, 266–74, ECF No. 1-4. The state court record does not contain any state court order dismissing these claims. Standard has not moved this Court to dismiss or to grant summary judgment on these statutory claims for violations of Kentucky's Unfair Claim Settlement Practices Act and for violations of Kentucky's Consumer Protection Act. The Court will not assume that they have been dismissed. If Standard wishes the Court to rule on these claims, it should submit a motion and a memorandum addressing them. At this time, however, these claims remain pending.

V.      Conclusion

The Court will grant Standard's motion for summary judgment on its counterclaim for breach of contract (Count I). The Court will dismiss Standard's counterclaims for restitution and recoupment (Count III) and for declaratory relief (Count IV). The Court will deny Standard's motion for summary judgment on Graves's claims for breach of contract (Count I) and for breach of the duty of good faith and fair dealing (Count II). The Court will deny Graves's motion for partial summary judgment. The matter will be referred to the magistrate judge for scheduling. An order will be entered in accordance with this opinion.

November 18, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**